*State of Maryland v. Charles Edward Wallace*, No. 1414, Sept. Term 2019. Opinion filed on August 26, 2020, by Berger, J.

POSTCONVICTION - INEFFECTIVE ASSISTANCE OF COUNSEL - REMEDY

When trial counsel rendered ineffective assistance of counsel by failing to object to an erroneous jury instruction on attempted second-degree murder, the appropriate remedy was not vacatur of all charges. Rather, the court must consider the specific elements of each offense and the specific erroneous instruction when determining which convictions were tainted by the erroneous instruction. In this case, the appropriate remedy was vacatur of the second-degree attempted murder conviction only.

POSTCONVICTION - INEFFECTIVE ASSISTANCE OF COUNSEL - BAD ACTS EVIDENCE - MOTIVE

Trial counsel was not ineffective in failing to challenge the admissibility of the victim's testimony about the petitioner having slashed the victim's tires approximately six years prior to the shooting. Trial counsel did not perform deficiently in conceding the admissibility of this testimony because the testimony was potentially relevant to the petitioner's motive as well as to the identity of the shooter.

POSTCONVICTION - INEFFECTIVE ASSISTANCE OF COUNSEL - FAILURE TO OBJECT - CRIME OF VIOLENCE INSTRUCTION

Trial counsel's performance was deficient when she failed to object when the trial court informed the jury that the petitioner had previously been convicted of a crime of violence in the context of its instructions regarding the charged firearm offenses, but the petitioner was unable to demonstrate how he was prejudiced by this deficiency.

POSTCONVICTION - INEFFECTIVE ASSISTANCE OF COUNSEL - CUMULATIVE EFFECT

The petitioner was not entitled to postconviction relief due to the cumulative effect of trial counsel's errors when there were only two clear-cut instances of deficient performance: trial counsel's failure to object to the defective jury instruction for attempted second-degree murder and trial counsel's failure to object to the misstatements of the stipulation, which erroneously informed the jury that the petitioner previously had been convicted of a crime of violence. The prejudicial effect of the first deficiency was limited to the attempted second-degree murder offense, and the second deficiency resulted in no prejudice. The petitioner was entitled to vacatur of the attempted second-degree murder conviction only.

Circuit Court for Anne Arundel County
Case No. 02-K-10-002013

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1414

September Term, 2019

_____

STATE OF MARYLAND

v.

CHARLES EDWARD WALLACE

_____

Berger,
Wells,
Salmon, James P.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed:  August 26, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

A jury sitting in the Circuit Court for Anne Arundel County found appellee, Charles Wallace, guilty of attempted second-degree murder, first- and second-degree assault, use of a handgun in the commission of a crime of violence, possession of a regulated firearm after previously having been convicted of a crime of violence, and reckless endangerment.[1] The court thereafter sentenced Wallace to a term of thirty years' imprisonment for attempted second-degree murder, a consecutive term of twenty years' imprisonment (the first five without the possibility of parole) for use of a handgun in the commission of a crime of violence, and a concurrent term of five years' imprisonment, without the possibility of parole, for possession of a regulated firearm after previously having been convicted of a crime of violence, merging the remaining convictions for sentencing purposes. Wallace noted a direct appeal,[2] and, in an unreported opinion, a panel of this Court affirmed his convictions. *Wallace v. State*, Sept. Term, 2012, No. 557 (filed July 11, 2013) ("*Wallace I*").

Wallace subsequently filed a petition, under the Maryland Uniform Postconviction Procedure Act, seeking vacatur of his convictions. In his petition, Wallace alleged that his trial counsel had been ineffective in three ways: first, in failing to object to an erroneous jury instruction for attempted second-degree murder; second, in conceding the admissibility of "other crimes" evidence which, purportedly, was inadmissible; and third,

---

[1] The jury acquitted Wallace of attempted first-degree murder.

[2] In his direct appeal, Wallace raised two issues: whether the trial court had erred in denying his motion to suppress evidence, and whether it had erred in admitting gunshot residue evidence. *Wallace v. State*, Sept. Term, 2012, No. 557, slip op. at 2 (filed July 11, 2013). Neither of those issues is pertinent to this appeal.

in failing to object to the trial court's erroneous and prejudicial statements to the jury, when explaining the firearm possession offense, that Wallace previously had been convicted of a crime of violence. Following a hearing, the postconviction court issued a memorandum opinion and order granting Wallace's petition and awarding him a new trial.

The State filed a motion for reconsideration, which was denied. The State then filed an application for leave to appeal.[3] Although the State conceded that trial counsel had been ineffective in failing to object to the erroneous attempted second-degree murder jury instruction, it contended that Wallace was entitled only to vacatur of that conviction and that the postconviction court erred in granting a new trial as to all outstanding charges. An applications panel of this Court granted the State's application and transferred the case to the regular appellate docket.

In this appeal, the State raises two issues, which we have re-phrased:

I. Whether the postconviction court erred in awarding Wallace a new trial rather than vacatur of the attempted second-degree murder conviction; and

II. Whether the postconviction court abused its discretion when, in its revised order, it reversed the findings it had articulated in its memorandum opinion and provided no support for the change in course.

---

[3] After the postconviction court initially ruled in favor of Wallace, the State filed a motion for reconsideration. After Wallace filed a response, the postconviction court issued an order denying the State's motion for reconsideration and "clarify[ing]" (and amending) its previous order. Because the State's application for leave to appeal was filed within 30 days of the entry of both the original and the amended orders, the latter order is properly the subject of this appeal.

For the reasons that follow, we vacate the postconviction court's order and remand with instructions to vacate the attempted second-degree murder conviction but otherwise deny the postconviction petition.  Given our resolution of this appeal, we need not and shall not address the second issue.

## BACKGROUND

### The Crimes

We quote our unreported opinion in Wallace's direct appeal for factual context:

> Steven Freeman ("Freeman"), the victim, testified that he has known Wallace for more than ten years and refers to him by his nickname, "Junior."  Freeman knew Wallace from their neighborhood but testified that they were not friends.  According to Freeman, Wallace would try to sell him drugs, but Freeman refused to buy any because Wallace tried to sell "fake" drugs.  Freeman explained that Wallace would become angry and aggressive when he refused to buy drugs from him.  Freeman further testified that on one occasion, Wallace "flattened [his] front tire[.]"

> On September 25, 2010, Freeman went to Madison Street on three different occasions to buy drugs.  The third time Freeman went to purchase narcotics, at approximately 5:00 a.m., Freeman saw Wallace and an unknown man on Madison Street while he was waiting for his seller to come outside.  Thereafter, Wallace approached Freeman's car and asked him if he "needed something."  Freeman replied that he was waiting for someone else and did not want to buy drugs from Wallace because the drugs were fake.  According to Freeman, Wallace became aggressive, argumentative, and "turned like he was starting to walk away and then . . . said 'Well, take this, then,'  And that's when [Wallace] turned around with the gun[.]"  Freeman testified that Wallace shot him in the arm and then he "threw the car in reverse real quick . . . and that's when the second bullet went through [his] chest."  Freeman hit the emergency OnStar button in his car when he was pulling out of the street and told the operator that he had been shot by a man named "Junior."

3

*Wallace I*, slip op. at 2-3.

## Trial

A ten-count indictment subsequently was returned, in the Circuit Court for Anne Arundel County, charging Wallace with attempted murder in the first-degree, attempted murder in the second-degree, assault in the first-degree, assault in the second-degree, use of a handgun in the commission of a felony, use of a handgun in the commission of a crime of violence, carrying a concealed weapon, possession of a regulated firearm after previously having been convicted of a crime of violence, possession of a regulated firearm after previously having been convicted of a disqualifying crime, and reckless endangerment.

A jury trial ensued. In addition to the victim's testimony, a shirt worn by Wallace on the night of the shooting was admitted into evidence; forensic testing disclosed the presence of gunshot residue on that shirt. *Wallace I*, slip op. at 16-22. Ultimately, eight counts of the indictment were presented to the jury,[4] and Wallace was acquitted of attempted first-degree murder but convicted of the remaining offenses.

## Postconviction Rulings

To provide context for our analysis, we set forth the postconviction court's rulings, both in its original memorandum opinion and its amended order.

---

[4] The trial court granted a judgment of acquittal on the concealed weapon charge, and the State entered a *nolle prosequi* to the charge of use of a handgun in the commission of a felony.

4

In its memorandum opinion, the postconviction court determined that trial counsel's failure to object to the concededly erroneous attempted second-degree murder jury instruction constituted deficient performance which caused prejudice to Wallace. In a footnote elsewhere in its opinion, it further declared, without explanation, that the proper remedy for that ineffective assistance was a new trial on all charges.

As for trial counsel's concession that purportedly inadmissible "other bad acts" evidence was admissible, the postconviction court, in its memorandum opinion, found that, although the evidence was inadmissible, trial counsel's concession could be deemed trial strategy, and it declined to find deficient performance. As for trial counsel's failure to object to the trial court's statements, informing the jury that Wallace previously had been convicted of a "crime of violence," the postconviction court found deficient performance but no prejudice "solely based on this particular deficient performance."

The postconviction court then proceeded to address whether the cumulative effect of all trial counsel's errors was sufficient to result in ineffective assistance.[5] The postconviction court declared that the "*combination* of the three allegations" raised in Wallace's petition amounted to deficient performance, that prejudice had ensued, and that Wallace was entitled to a new trial.

In response to the State's motion for reconsideration, the postconviction court issued an amended order. The amended order not only denied the State's motion for

---

[5] Wallace's petition did not raise a "cumulative effect" claim. We express no opinion as to the propriety of the postconviction court addressing such a claim *sua sponte*.

reconsideration, it further declared, among other things, "that the Memorandum Opinion entered June 13, 2019 shall be clarified to reflect the Court's finding that trial counsel's failure to object to the prior bad acts evidence was an error and amounts to deficient performance;" and "that the Memorandum Opinion entered June 13, 2019 shall be clarified to reflect the Court's finding that the cumulative effect of trial counsel's errors clearly resulted in denial of effective assistance of counsel[.]"

Additional facts will be recited where pertinent to the issues.

## DISCUSSION

### Standard of Review

"The ultimate question of whether counsel was ineffective 'is a mixed question of law and fact.'" *State v. Thaniel*, 238 Md. App. 343, 359-60 (quoting *Newton v. State*, 455 Md. 341, 352 (2017)), *cert. denied*, 462 Md. 93 (2018), *cert. denied*, 587 U.S. __, 139 S. Ct. 2027 (2019). "We defer to the factual findings of the postconviction court unless clearly erroneous, but we review its ultimate legal conclusions without deference, re-weighing the facts in light of the law to determine whether a constitutional violation has occurred." *Id.* at 360 (citation and quotation omitted) (cleaned up).

### Legal Standards Governing Ineffective Assistance Claims

"The right to the effective assistance of trial counsel is grounded in the Sixth Amendment, made applicable to the States through the Fourteenth Amendment." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984)). An ineffective assistance claim consists of two elements: deficient performance and prejudice. *Newton*, 455 Md. at

6

355 (citing *Strickland*, 466 U.S. at 687). A postconviction petitioner bears the burden of proof. *Strickland*, 466 U.S. at 687.

To establish deficient performance, the petitioner must show "that counsel's performance was objectively unreasonable 'under prevailing professional norms.'" *Thaniel*, 238 Md. App. at 360 (quoting *Strickland*, 466 U.S. at 688). Because our "scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, we indulge a "strong presumption" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. We "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "It is the petitioner's burden to 'identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' whereupon a reviewing court 'must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Thaniel*, 238 Md. App. at 360 (quoting *Strickland*, 466 U.S. at 690).

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To establish prejudice, the petitioner must demonstrate "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 693. That standard is less demanding than proof by a preponderance of the evidence but requires more than

7

merely showing "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693-94.

"Even when no single aspect of the representation falls below the minimum standards required under the Sixth Amendment, the cumulative effect of counsel's entire performance may still result in a denial of effective assistance." *Cirincione v. State*, 119 Md. App. 471, 506, *cert. denied*, 350 Md. 275 (1998). "Apparently, this cumulative effect may be applied to either prong of the *Strickland* test." *Id.* Thus, "numerous non-deficient errors may cumulatively amount to a deficiency," *id.* (citing *Bowers v. State*, 320 Md. 416, 436 (1990)), or "numerous non-prejudicial deficiencies may cumulatively cause prejudice." *Id.* (citing *Harris v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir. 1995)).

## Analysis

### Failure to Object to Erroneous Jury Instruction

Wallace's first claim of ineffective assistance is based upon trial counsel's failure to object to the trial court's instruction on attempted murder in the second degree:

> The Defendant is also charged with the crime of attempted second-degree murder. A second-degree murder is the killing of another person, is the attempted killing -- excuse me -- of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result.
>
> Second-degree murder does not require premeditation or deliberation. **In order to convict the Defendant of attempted second-degree murder, the State must prove that, by his conduct, the Defendant attempted to cause the death of Steven Freeman and that the Defendant engaged in the deadly conduct either with the intent to kill <u>or with the intent to inflict such serious bodily harm that death would be the likely result.</u>**

8

(Emphasis added.)

The State correctly conceded, at the postconviction hearing, that the instruction was erroneous. To prove attempted murder in the second degree, the State must show that the defendant acted with the specific intent to murder, not merely the intent to cause such serious bodily harm that death would be the likely result. *State v. Earp*, 319 Md. 156, 163 (1990). *See* Maryland State Bar Ass'n, *Maryland Pattern Criminal Jury Instruction* ("MPJI-Cr") 4:17.13(B) (Md. State Bar Ass'n, 2d ed. 2012). In effect, the trial court erroneously conflated the intent element of consummated second-degree murder and that for the attempted crime. Moreover, the State does not contest the postconviction court's ruling that trial counsel acted deficiently in failing to object to this erroneous instruction and that Wallace suffered prejudice as a result.[6]

The only disagreement between the parties regarding this claim is the remedy to which Wallace is entitled. As the State points out, a reviewing court assessing the effect of an instructional error on a verdict comprising multiple convictions must consider each conviction separately; and, whenever the error has no influence on a conviction, that

---

[6] As noted previously, Wallace also was charged with attempted first-degree murder but was acquitted of that charge. Given that acquittal, we accept the State's concession that Wallace suffered prejudice as a result of trial counsel's failure to object to the erroneous attempted second-degree murder instruction. We see no reason to disturb the postconviction court's conclusion that Wallace established a reasonable probability that, but for trial counsel's failure to object to the erroneous instruction, the jury would have acquitted him of attempted second-degree murder. *See Strickland v. Washington*, 466 U.S. 668, 695 (1984) (observing that when "a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt").

conviction stands. *See State v. Hawkins*, 326 Md. 270, 291 (1992) (observing that "where there are multiple offenses involved, . . . the remedy for an error in the instructions on one of the offenses depends upon the degree to which the erroneous instruction taints each individual conviction"). *Compare Hallowell v. State*, 235 Md. App. 484, 507-10 (2018) (vacating conviction of use of a firearm in the commission of a crime of violence because instructional error required vacatur of the predicate violent crime conviction), *with Nottingham v. State*, 227 Md. App. 592, 612 (2016) (affirming conviction of misdemeanor manslaughter because the jury had found the defendant guilty of three separate predicate offenses, and only one of the predicate convictions was affected by the instructional error). Surely, a postconviction petitioner, raising an ineffective assistance claim based upon an *unpreserved* claim of instructional error, is not entitled to a *greater* remedy than an appellant raising a claim of instructional error on direct appeal, whether preserved or not.[7]

In addition to attempted second-degree murder, Wallace was convicted of first- and second-degree assault, use of a handgun in the commission of a crime of violence, possession of a regulated firearm after previously having been convicted of a disqualifying

---

[7] Neither *Hawkins* nor its progeny discusses the degree of linkage between a conviction, directly affected by an instructional error, and other convictions, that is required so that an appellate court must vacate the other convictions. *Hawkins* suggests how we should proceed. Since we must determine "the degree to which the erroneous instruction taints each individual conviction," 326 Md. at 291, then, presumably, depending upon whether the claim is preserved, we would apply either the *Dorsey* harmless error standard or the plain error standard, if the claim arises on direct appeal. By analogy, in a postconviction case such as this, we must determine, for each conviction, whether there is a reasonable probability that, but for trial counsel's failure to object to the erroneous instruction, the jury would have found reasonable doubt.

crime, and reckless endangerment. The erroneous jury instruction, to which trial counsel had failed to object, permitted a conviction upon a lesser proof of the specific intent to commit attempted second-degree murder. That error obviously had no effect whatsoever on the convictions of possession of a regulated firearm after previously having been convicted of a disqualifying crime and reckless endangerment.

The only convictions that conceivably could have been tainted by the erroneous instruction for attempted second-degree murder are the convictions of first- and second-degree assault and use of a handgun in the commission of a crime of violence. We begin with the assault convictions.

The first- and second-degree assaults were based upon the same act (shooting the victim) and, under the circumstances of this case, were lesser included offenses of attempted second-degree murder. The only theory of second-degree assault presented to the jury was battery. That variety of second-degree assault requires the State to prove that the defendant caused offensive physical contact or physical harm to the victim, that the contact resulted from the defendant's intentional or reckless act and was not accidental, and that the victim did not consent to the contact. MPJI-Cr 4:01. It is clear that the jury's finding that Wallace had, at least, the intent to inflict such grievous bodily harm that death would be the likely result was more than enough to prove that it found the intent to commit battery, whether of the intentional or unintentional variety. *See Lamb v. State*, 93 Md. App. 422, 445-55 (1992) (describing the distinction between intentional battery and unintentional battery), *cert. denied*, 329 Md. 110 (1993).

11

As for first-degree assault, at all times relevant to this proceeding, that offense could be committed in two ways—by committing a second-degree assault and, in addition, either of two aggravators: intentionally causing or attempting to cause "serious physical injury" to another; or committing an assault "with a firearm." Md. Code (2002), Criminal Law Article ("CR"), § 3-202(a)(1), (2).[8] In *Thornton v. State*, 397 Md. 704, 728-30 (2007), the Court of Appeals examined the relationship between the specific intent required for second-degree murder based upon the intent to inflict grievous bodily harm and the specific intent required for first-degree assault based upon the intent to cause serious physical injury. It held that the specific intent required to prove first-degree assault based upon the intent to cause serious physical injury was always established by proof of the specific intent required for second-degree murder based upon the intent to inflict grievous bodily harm, but not vice versa. *Id.* at 728-30.

Under the facts of this case, the jury could have found either or both modes of first-degree assault. To the extent it may have found that Wallace committed first-degree assault based upon the intent to cause serious physical injury, the jury's finding that Wallace had, at least, the intent to inflict such serious bodily harm that death would be the likely result was more than enough to prove that it found the intent necessary to establish this type of first-degree assault. Further, to the extent it may have found that Wallace

---

[8] Effective October 1, 2020, an amendment to the first-degree assault statute will become effective, which adds a third means of committing a first-degree assault: "by intentionally strangling another." 2020 Md. Laws, chs. 119, 120. All statutory references are to the version in effect at the time of the offenses.

12

committed first-degree assault with a firearm, it goes without saying that the jury's finding that Wallace had, at least, the intent to inflict such serious bodily harm that death would be the likely result was more than enough to prove that it found the intent necessary to establish this mode of first-degree assault as well.[9]

Turning to use of a handgun in the commission of a crime of violence, we observe that there were three predicate convictions in this case: attempted second-degree murder, first-degree assault, and second-degree assault. Md. Code (2003), Public Safety Article ("PS"), § 5-101(c)(3), (11) (16).[10] As we have just explained, only one of those predicates, attempted second-degree murder, was tainted by the erroneous jury instruction. Therefore, the conviction of use of a handgun in the commission of a crime of violence is untainted by the erroneous conviction of attempted second-degree murder, because the jury separately found two untainted, valid predicates for the use-of-a-handgun conviction. *Nottingham*, *supra*, 235 Md. App. at 612. We conclude that the appropriate remedy, in the instant case, is vacatur of the conviction of attempted murder in the second degree, the only conviction affected by trial counsel's failure to object to the erroneous jury instruction.[11]

---

[9] The intent required to prove first-degree assault with a firearm was, in this case, the intent to commit a battery. The additional element, use of a firearm, is unaffected by the instructional error as to the specific intent to commit attempted second-degree murder.

[10] CR § 4-204, which proscribes use of a regulated firearm in the commission of a crime of violence, defines "crime of violence" by reference to PS § 5-101.

[11] In passing, we note that the decisions Wallace cites in support of his notion that the erroneous attempted second-degree murder jury instruction had a "spillover" effect, *Brooks v. State*, 299 Md. 146 (1984), and *Sherman v. State*, 288 Md. 636 (1980), were in an entirely different procedural posture than the instant case, and neither case involved a

13

**Trial Counsel's Concession to the Admission of "Other Bad Acts" Evidence**

Wallace's second postconviction claim alleged that trial counsel had been ineffective in conceding the admissibility of "other bad acts" evidence which, purportedly, was inadmissible. Initially, the postconviction court found, without elaboration, that the "other bad acts" evidence was inadmissible but that trial counsel's actions could be construed as trial strategy, and thus, there was no deficient performance. Ultimately, in its amended order, the postconviction court declared that "trial counsel's failure to object to the prior bad acts evidence was an error and amounts to deficient performance," without expressly finding whether there was prejudice attributable to that purported deficiency.[12] Before addressing this claim, we set forth the background.

---

claim of instructional error. The errors in those cases stemmed from the effect of erroneously reinstating a charge after having granted a motion for judgment of acquittal (*Brooks*) or erroneously sending a copy of the indictment into the jury room without redacting the "dead counts," for which acquittal had been granted (*Sherman*). Those cases shed no light on our analysis.

[12] The postconviction court did, however, "double down" on its ruling of cumulative effect, declaring, in its amended order:

> that the Memorandum Opinion entered June 13, 2019 shall be clarified to reflect the Court's finding that there is reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different; and . . .
>
> . . . that the Memorandum Opinion entered June 13, 2019 shall be clarified to reflect the Court's finding that the cumulative effect of trial counsel's errors clearly resulted in denial of effective assistance of counsel[.]

On the morning of the second day of trial, prior to opening statements,[13] the prosecutor moved in limine to be permitted to present testimony by the victim, Freeman, about his prior dealings with Wallace, as prior "bad acts."[14] According to the prosecutor, Freeman had told her that he knew Wallace from having frequented the open-air drug market where the shooting had occurred; that he did not want to purchase drugs from Wallace because Wallace was known for selling "gank" (a street name for fake drugs); that, approximately "10 or 12 times" previously, Wallace had harassed him because he refused to buy drugs from Wallace[15]; that others had told him that Wallace was "bad news" and prone to violence[16]; and that, approximately six or seven years prior to the shooting, after Freeman had refused to purchase drugs from Wallace, Wallace, in a fit of rage, slashed a tire on Freeman's vehicle.

Trial counsel initially objected to admitting any of Freeman's statements:

-- I think what [the prosecutor] is trying to get in is clearly propensity evidence for all these prior bad acts, especially

---

[13] The prior day had been consumed in selecting a jury.

[14] The prosecutor explained that the reason for the late disclosure was that she had had trouble locating Freeman and that she had just become aware of the new evidence several days previously.

[15] The prosecutor characterized this as "a continuing argument that he won't buy from him."

[16] For example, according to the prosecutor, Freeman told her that a friend, who was a drug dealer, had been robbed at gunpoint by Wallace. The prosecutor conceded, however, that this statement would not be admissible. Freeman also claimed that he had observed Wallace throw a brick through a window during a dispute, between Wallace and another person, that had arisen during a drug deal; and that he had observed Wallace force yet another person, at knifepoint, to purchase fake drugs from him.

since with the exception of the tire incident Mr. Freeman didn't witness any of them, they're all hearsay, that he's heard my client's violent, the knife incident didn't involve him not wanting to buy fake drugs.

The trial court suggested that the tire-slashing statement might be admissible to show motive, and trial counsel agreed:

> THE COURT: What about motive? I mean why would he just walk up to him and shoot him for no reason? Could the State get in motive?
>
> * * *
>
> Isn't the State entitled to put in a reason why [appellant] might come up and shoot him and that would be the -- the possible motive would be we've been having a dispute for 10 or 12 years, this is the dispute, and then this was the straw that broke the camel[']s back?
>
> [TRIAL COUNSEL]: I think that's fair. I do think that's fair. Because in the discovery it did [allude] to the fact that my client allegedly sells gank, fake drugs. I think that's fair, the ongoing fight.

The trial court thereafter invoked Maryland Rule 5-404(b)[17]:

> THE COURT: Okay. And I will just for the record read Rule 5-404(b).

---

[17] At the time of Wallace's trial Maryland Rule 5-404(b) provided:

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or other acts including acts as defined by Code, Courts Article, § 3-801 is not admissible to prove the character of a person in order to show action in the conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

16

"Evidence of other crimes or wrongs or acts is not admissible to prove the character of the person in order to show the action was in conformity," which is what you were talking about, propensity.

[TRIAL COUNSEL]: Uh-huh.

THE COURT: "It may however be admissible for other purposes such as proof of motive," which is where I'm coming from.

[TRIAL COUNSEL]: Yes.

THE COURT: And it does sound like it would fall under the category of motive here. And as long as that's the way the State plays it I think that that would be -- it would be admissible for that reason.

[TRIAL COUNSEL]: Okay. And I agree with the Court on that, but how does the Court feel about the other incidents which Mr. Freeman has heard through the grapevine --

THE COURT: Well, see I don't know what the case is going to be. Is there going to be evidence that there was an altercation, a physical altercation, or did the -- was the victim going to claim he was just shot? Because --

[TRIAL COUNSEL]: I don't think there's any evidence of a physical altercation, or --

THE COURT: Because the only way I see it as being relevant, if that were the case, would be that he was already scared of him, you know, that he had armed himself in anticipation of dealing with the Defendant because he knew what was going to happen, but we don't have any of that do we?

[PROSECUTOR]: No, he's sitting in a car, window up, cracks it, and he's shot.

THE COURT: And my fear is with that, is that it would fall into the first category, the propensity. Do you know what

17

I mean? Which they're saying it is not admissible for. Apparently you are not allowed to put it on for the purpose of showing that he's a violent guy and he's simply acting in conformity with his character of being a violent guy.

So that's why I feel like the State could put in appropriate evidence based -- to show what the motive is, this ongoing dispute, that he slashed his tires, you know, he's acted in a somewhat violent way.

[PROSECUTOR]: I agree -- I agree with the Court right now, I do. That's why I said maybe if something changes and counsel again opens the door then maybe we can readdress it.

Subsequently, Freeman testified about the tire slashing incident. Freeman had been loitering near the open-air drug market he frequented, waiting for a seller, when Wallace approached and asked whether he wanted to buy anything. Freeman declined the offer, prompting Wallace to ask why he never purchased from him; Freeman replied that Wallace is known for selling fake drugs. Freeman then backed up his vehicle to avoid a confrontation, and Wallace sliced the left front tire on his vehicle. Freeman "just kept going" on the flat tire and stopped to change his tire once he had escaped to safety.

We begin with the deficient performance prong. That leads us to consider whether Freeman's testimony about the tire slashing incident, approximately six years prior to the shooting, was admissible. If so, then trial counsel's failure to challenge its admissibility cannot be deficient performance. Moreover, if the admissibility of that testimony was debatable, then we still cannot say that trial counsel's actions were objectively unreasonable, *Thaniel*, 238 Md. App. at 360, and therefore, there would still be no deficient performance.

Motive is one of the purposes for which other crimes evidence may be admissible under Rule 5-404(b). "Evidence of previous quarrels and difficulties between a victim and a defendant is generally admissible to show motive." *Snyder v. State*, 361 Md. 580, 605 (2000).

Furthermore, motive "also may be relevant to the proof of two of the other exceptions to [Rule 5-404(b)], intent or identity." *Id.* at 604 (citations omitted). *Snyder* cited with approval *Jones v. State*, 182 Md. 653 (1944), in which the Court of Appeals held that evidence of prior violent acts against a murder victim, by the defendant, were admissible as evidence of intent and motive. *Snyder*, 361 Md. at 605-06.

Wallace contends that the probative value of Freeman's tire-slashing testimony, as to motive, was minimal. Indeed, that evidence would have greater probative value, as to motive, were the roles interchanged. But he ignores the fact that his defense relied upon mistaken identity—he claimed that the shooter was his son, who physically resembled him (and, at the time of trial, was, conveniently for Wallace, deceased). Freeman's testimony was relevant not only to motive but to the identity of the shooter.

It is clear that the trial court was attempting to apply the pertinent rule, which it quoted during the bench conference at issue. To the extent that it did not expressly make findings under the *Faulkner* test,[18] the short answer is that trial counsel's concession of admissibility obviated the need for that analysis. But we can be reasonably certain that, had trial counsel objected, the trial court would have fleshed out its rationale for admitting

_____

[18] *State v. Faulkner*, 314 Md. 630, 634-35 (1989), sets forth a three-step analysis a trial court should undertake when faced with a motion to admit other crimes evidence.

19

the tire-slashing testimony. *Ball v. State*, 347 Md. 156, 206 (1997) (stating that "[t]rial judges are presumed to know the law and to apply it properly"). And, in any event, we do not think the trial court erred in admitting the tire-slashing testimony, which was relevant both to motive and identity.

We, therefore, conclude that trial counsel did not perform deficiently in conceding its admissibility. But even if admissibility of this testimony was a close call, we still cannot say that trial counsel's concession to its admissibility was objectively unreasonable.

### Trial Counsel's Failure to Object to the Trial Court's Statements to the Jury Informing Them That Wallace Had a Prior Violent Crime Conviction

Wallace's third and final postconviction claim alleged that trial counsel had been ineffective in failing to object to the trial court's erroneous and prejudicial statements to the jury, when explaining the firearm possession offenses, that Wallace previously had been convicted of a crime of violence. The postconviction court found that trial counsel had performed deficiently but that it could not conclude, "solely based upon this particular deficient performance," that prejudice had ensued. Before addressing this claim, we set forth the background.

Wallace was charged with possession of a regulated firearm by a person previously convicted of a disqualifying crime, in violation of PS § 5-133(b), and with possession of a regulated firearm by a person previously convicted of a crime of violence, in violation of

20

PS § 5-133 (c), based upon a single act of possession.[19]  In an attempt to comply with

*Carter v. State*, 374 Md. 693 (2003),[20] the prosecutor read to the jury a stipulation to

Wallace's prior conviction:

> In this particular case the State and the Defense stipulate that this Defendant, Charles Edward Wallace, Jr., was previously convicted of a disqualifying offense in this state that prohibited him from possessing a regulated firearm at the time of this offense, and the Judge will instruct you later about what that means.

Subsequently, during a bench conference immediately prior to the close of all the evidence,

the prosecutor announced that she would read the stipulation to the jury, but with a twist[21]:

> I added the language, which is a crime of violence, to that stipulation.

Trial counsel did not object.

Thereafter, the prosecutor, without objection, stated to the jury:

---

[19] Under such circumstances, only a single sentence could have been imposed. *Melton v. State*, 379 Md. 471, 474, 503 (2004).  (Indeed, *Melton* went further and held that only a single *conviction* may be entered for a given act of illegal possession.)

[20] *Carter* held that, where a defendant is charged with a violation of what is now PS § 5-133, based upon a prior conviction, a trial court abuses its discretion if it fails to allow the defendant to stipulate to the prior conviction.  *Carter*, 374 Md. at 721.  The Court further held that, when the jury is informed of such a stipulation, it should be told only that "the defendant admits that he or she has been convicted of a crime for which he or she is prohibited from possessing a regulated firearm under the law" and that the court "should not describe the previous conviction with any more particularity or by using the categories of crimes under [PS § 5-133] (such as "crime of violence" or "felony")."  *Id.* at 722 (footnote omitted).

[21] Presumably, the State sought to change the stipulation to distinguish between the two counts of the indictment, which charged otherwise indistinguishable offenses.

21

And then I believe this is a stipulation that we had previously read, Your Honor, that we had to change. So it's actually the stipulation in State's 20.

The stipulation is that the State and the Defense stipulate that this Defendant, Charles Edward Wallace, Junior, was previously convicted of a disqualifying offense in this State, **which is a crime of violence,** that prohibited him from possessing a regulated firearm at the time of this offense.

(Emphasis added.)

Then, the trial court instructed the jury:

A person may not possess a regulated firearm if the person has been previously convicted of a disqualifying offense. The State and the Defendant have stipulated that this Defendant was previously convicted of a disqualifying crime.

\* \* \*

All right. **The State and the Defense have also stipulated that the Defendant was previously convicted of a crime of violence.**

\* \* \*

Okay. Counsel, anything at the bench regarding the instructions?

(Emphasis added.)

The prosecutor objected, and a bench conference ensued:

[PROSECUTOR]: I'm sure, Judge, I mean, I heard, when you -- I heard, at the very end there, you said the parties have stipulated to the fact that the Defendant has a conviction for a crime of violence. Did you give it twice --

THE COURT: Yeah.

[PROSECUTOR]: -- or two different ways, that we had talked about?

22

THE COURT:  (Indiscernible).  And then I thought I said (indiscernible).

[PROSECUTOR]:  But remember, you said you were going to give the whole once --

THE COURT:  Okay.  I'll read it again.

[PROSECUTOR]:  -- with just (indiscernible) and the whole thing again --

THE COURT:  With the crime of violence.

[PROSECUTOR]:  -- with a crime of violence.

THE COURT:  Okay.

[PROSECUTOR]:  No.  What we said --

[TRIAL COUNSEL]:  **I thought we were just going to combine it once.**

THE COURT:  Well, we were.  Yeah.

[PROSECUTOR]:  But then you said it had to be separate instructions.

[TRIAL COUNSEL]:  **Okay.**

THE COURT:  (Indiscernible).

[PROSECUTOR]:  Right.  It's -- right.

∗ ∗ ∗

THE COURT:  Okay.  [Are] there any exceptions on your side?

[TRIAL COUNSEL]:  No.

(Emphasis added.)

The trial court then further instructed the jury:

23

> All right. I'm going to re-read one of the instructions that has to do with possession of a regulated firearm. I had previously told you that a person may not possess a regulated firearm if the person has been previously convicted of a disqualifying offense.
>
> **The law also is -- and you will see a count for this -- a person may not possess a regulated firearm if the person has been previously convicted of a crime of violence. The State and Defense have stipulated that this Defendant was previously convicted of a crime of violence.**
>
> * * *

(Emphasis added.) The stipulation, as amended by the State, ultimately was submitted to the jury, along with all except one of the remaining exhibits, which the parties had agreed should not be submitted.

Not only did trial counsel not object to the language in the stipulation, improperly informing the jury that Wallace previously had been convicted of a crime of violence, *Carter*, 374 Md. at 722, she knowingly acquiesced in the decision to present it to the jury. There was no conceivable tactical reason for doing so, and we agree with the postconviction court that this amounted to deficient performance.

Wallace cannot, however, show how he was prejudiced by this deficiency. Had trial counsel objected, on the basis of *Carter*, we presume the trial court would have sustained the objection and removed the offending text from the stipulation. *See Newton*, *supra*, 455 Md. at 361 (noting that, in assessing the prejudice prong of an ineffective assistance claim, "we presume that the judge acted according to law") (quoting *Strickland*, 466 U.S. at 694) (cleaned up). The State, in turn, in all likelihood would have entered a *nolle prosequi* to the lesser charge (the violation of PS § 5-133(b)), to avoid confusing the jury, and the

24

original stipulation, which complied with *Carter*, would have been read to the jury. Given that the jury found that Wallace had shot the victim (which is the only conclusion we can reasonably draw from its finding of guilt of attempted murder, a conclusion that is untainted by the faulty intent instruction addressed previously[22]), there is absolutely no reason to believe that the jury would have acquitted Wallace of violating PS § 5-133(c).

But even had the State stubbornly persisted in pursuing both illegal firearm possession charges, the stipulation would have been re-worded to reflect the fact that Wallace had multiple prior convictions rendering him ineligible to possess a regulated firearm as to both counts. We still see no reasonable probability that the jury would have acquitted on either charge. And, in any event, we shall not presume that a confused jury would have acquitted Wallace on one or both illegal firearm possession charges; to the contrary, we presume that the jury would have followed the instructions provided. *See Newton*, 455 Md. at 360 (applying presumption "that the jury followed the court's instructions").

---

[22] The erroneous attempted second-degree murder instruction diluted the State's burden to prove the necessary specific intent to commit murder, leaving open the possibility that the jury may have found merely the intent to inflict grievous bodily harm. It had absolutely no bearing on the jury's apparent finding that Wallace had shot the victim, which necessarily implies that he had possessed a regulated firearm at that time. Moreover, given that the jury clearly found that Wallace had shot the victim, we do not believe Wallace has shown a reasonable probability that, but for trial counsel's failure to object to the faulty stipulation, the jury would have acquitted him of either first- or second-degree assault.

**Cumulative Effect**

Although Wallace's postconviction petition did not raise a cumulative effect claim, the postconviction court, *sua sponte*, purported to apply the cumulative effect doctrine, articulated in *Bowers v. State*, 320 Md. 416 (1990),[23] and found that the cumulative effect of trial counsel's errors warranted a new trial. We disagree.

Initially, we observe that the cumulative effect theory, although adopted by the Court of Appeals and other courts, has exceedingly narrow application.[24] So far as we are aware, it has been pursued successfully only once in a Maryland published decision. *Bowers*, 320 Md. 416. In *Bowers*, the Court of Appeals found "numerous lapses" in attorney performance, which, taken together, left it "convinced that but for counsel's errors the result of the trial might well have been different." *Id.* at 436. That case bears little similarity to the case before us.

In *Cirincione v. State*, *supra*, 119 Md. App. 471, we explained just how much of an outlier *Bowers* is:

---

[23] Wallace's postconviction petition cited *Bowers* only once, for the entirely anodyne proposition that the burden of proof to establish *Strickland* prejudice requires less than a preponderance of the evidence. *Strickland* itself said the same thing. 466 U.S. at 693 (stating "that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case").

[24] Our research has disclosed no Supreme Court decisions applying the cumulative effect theory to a *Strickland* claim. The Supreme Court has, however, done so in a case addressing multiple *Brady* violations. *Kyles v. Whitley*, 514 U.S. 419 (1995). We observe that the same prejudice standard applies to both *Brady* claims and *Strickland* claims. *Strickland*, 466 U.S. at 394.

In *Bowers*, the appointed attorney had a demonstrably contentious relationship with the defendant and only met with him sporadically before trial. The attorney unjustifiably failed to investigate physical evidence pertaining to the charged murder, including plaster casts of tire markings, fibers found under the victim's fingernails, and semen stains found in her underwear. At trial, the attorney presented no opening statement, put on no defense testimony, and committed numerous errors of omission regarding the cross-examination of the State's witnesses. Bowers's counsel additionally failed to request an instruction on voluntary intoxication as a defense to first degree murder, in spite of evidence presented by prosecution witnesses to support such an instruction.

*Id.* at 507.[25]

The instant case is readily distinguishable from *Bowers*. Here, there are only two clear-cut instances of deficient performance: trial counsel's failure to object to the defective jury instruction for attempted second-degree murder, and the failure to object to the misstatements of the stipulation, which erroneously informed the jury that Wallace previously had been convicted of a crime of violence. The prejudicial effect of the first deficiency was limited, as we explained previously, to the attempted second-degree murder conviction, and the second resulted in no prejudice. Whether considered separately or together, their impact was the same—the prejudice Wallace suffered was limited to the

---

[25] *Cirincione* cited a decision of the United States Court of Appeals for the Ninth Circuit, *Harris v. Wood*, 64 F.3d 1432 (9th Cir. 1995), as exemplifying the prejudice flowing from the cumulative effect of multiple attorney errors. In that case, the Ninth Circuit determined that trial counsel's performance had been "deficient in eleven ways, eight of them undisputed" and that those deficiencies were "serious" in nature. *Id.* at 1438-39. (Among those deficiencies were inadequate pre-trial investigation and preparation, failure to consult with the client, failure to object to evidence, and failures during voir dire, jury instructions, and closing statement. *Id.* at 1438.) The instant case bears no resemblance to *Harris*.

attempted second-degree murder conviction, and he is not entitled to vacatur of the remaining convictions.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED. CASE REMANDED WITH INSTRUCTIONS TO VACATE APPELLEE'S CONVICTION OF ATTEMPTED SECOND-DEGREE MURDER, OTHERWISE DENY HIS PETITION, AND FOR RESENTENCING CONSISTENT WITH THIS OPINION. COSTS ASSESSED TO APPELLEE.**