*Charles Edward Wallace v. State of Maryland*, No. 46, September Term, 2020.  Opinion by Hotten, J.

**CRIMINAL LAW – INEFFECTIVE ASSISTANCE OF COUNSEL.**  Ineffective assistance of counsel only warranted reversal of the conviction that was prejudiced by the deficient performance of counsel under *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984), and its progeny.

**CRIMINAL LAW – INEFFECTIVE ASSISTANCE OF COUNSEL – CUMULATIVE EFFECT THEORY.**  The cumulative effect theory discussed in *Bowers v. State*, 320 Md. 416, 578 A.2d 734 (1990), that numerous deficiencies of trial counsel can, in the aggregate, amount to ineffective assistance of counsel, has an exceedingly narrow application and did not warrant a new trial.

Circuit Court for Anne Arundel County
Case No. 02-K-10-002013
Argued: April 9, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 46

September Term, 2020

_____

CHARLES EDWARD WALLACE

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: August 16, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

An altercation between Petitioner, Charles Wallace ("Wallace"), and a person waiting to purchase drugs from someone else, ended when the would-be purchaser was shot in the arm and chest. Wallace was subsequently arrested and later convicted, by a jury sitting in the Circuit Court for Anne Arundel County, of attempted second-degree murder, first- and second-degree assault, use of a handgun in the commission of a crime of violence, possession of a regulated firearm after previously having been convicted of a crime of violence, and reckless endangerment. At trial, Wallace raised a defense of mistaken identity, claiming that he was not the shooter. The court imposed a thirty-year sentence for the attempted second-degree murder count, a consecutive twenty-year sentence for use of a handgun in the commission of a crime of violence (the first five years without the possibility of parole), a concurrent five-year sentence for possession of a firearm after being convicted of a crime of violence (without the possibility of parole), and merged the remaining convictions for purposes of sentencing. Wallace appealed his convictions to the Court of Special Appeals, which affirmed in an unreported opinion. *Wallace v. State*, No. 557, Sept. Term, 2012 (Md. Ct. Spec. App. July 11, 2013).

In 2018, Wallace petitioned for post-conviction relief, asserting ineffective assistance of counsel based on: failing to object to an erroneous jury instruction; conceding the admissibility of other crimes evidence; and failing to object to the circuit court's prejudicial instructions to the jury regarding the firearm offense. The State conceded that Wallace merited a new trial for trial counsel's error regarding the erroneous jury instruction, but argued that the remaining convictions should be upheld because the other alleged errors did not qualify as ineffective assistance. Following a hearing, the post-

conviction court granted Wallace's petition and awarded a new trial on all counts, in part due to the cumulative effect of trial counsel's errors which constituted ineffective assistance.

The State appealed to the Court of Special Appeals, which reversed the post-conviction court's order and remanded for a new trial solely on the attempted second-degree murder charge. The intermediate appellate court determined that the erroneous jury instruction did not taint the jury's findings on the other convictions; the circuit court had not erred in admitting the other crimes evidence; the circuit court's prejudicial instructions to the jury regarding the firearm charge, and defense counsel's lack of objection, did not taint the verdict; and the limited cumulative effect theory did not warrant a reversal of all the convictions. Thereafter, Wallace appealed to this Court, and we granted *certiorari*, *Wallace v. State*, 471 Md. 520, 242 A.3d 1117 (2020), to address the following questions presented:

1. When reviewing whether trial counsel rendered ineffective assistance of counsel, is it proper for a reviewing court to evaluate prejudice by determining whether deficient performance would have been ameliorated had the error been brought to the [circuit] court's attention?

2. Did [the Court of Special Appeals] err in advising post-conviction courts that the cumulative effect theory—i.e., the theory that prejudice under *Strickland v. Washington*, 466 U.S. 668[, 104 S. Ct. 2052 (1984),] may be found by considering the collective impact of multiple instances of deficient performance—has "exceedingly narrow" application?

3. Did [the Court of Special Appeals] err in holding that defense counsel's failure to object to an erroneous instruction on attempted second-degree murder required the reversal of only that conviction, that defense counsel did not prejudice Petitioner when she failed to object to the disclosure to the jury that Petitioner had previously been convicted of a crime of violence, and/or that trial counsel's failure to object to alleged bad-

2

acts/other-crimes evidence constituted neither deficient performance nor conduct prejudicing Petitioner?

For the reasons expressed below, we shall affirm the judgment of the Court of Special Appeals.

## FACTUAL & PROCEDURAL BACKGROUND

On September 25, 2010, Steven Freeman purchased narcotics on three separate occasions in Annapolis. At approximately five o'clock in the morning, while waiting for a prearranged seller to arrive for his third purchase, Freeman noticed Wallace approaching. Freeman had known Wallace for about a decade, as Wallace had previously attempted to sell him drugs multiple times. The relationship between Wallace and Freeman was acrimonious, and nearly seven years before this incident, Wallace had slashed Freeman's tire after Freeman refused to purchase drugs from him. Freeman, who has struggled with substance abuse for nearly fifteen years, believed that Wallace sold fake drugs.

Wallace, accompanied by another individual, approached Freeman's vehicle and inquired whether Freeman "needed something." Freeman informed Wallace that he had already planned on meeting someone else and was not interested in purchasing fake drugs from Wallace. Wallace became argumentative and aggressive. According to Freeman, Wallace pulled out a firearm as he began walking away, turned back to Freeman and said "well, take this, then," before he shot Freeman once in the arm. As Freeman began driving

3

away, Wallace shot him a second time in the chest. Freeman thereafter contacted OnStar,[1] and stated that "[J]unior"—the name that Freeman knew Wallace by—had shot him.

**Conviction and First Appeal**

Wallace was arrested and subsequently indicted in the Circuit Court for Anne Arundel County on ten counts: attempted murder in the first-degree, attempted murder in the second degree, assault in the first-degree, assault in the second degree, use of a handgun in the commission of a felony, use of a handgun in the commission of a crime of violence, carrying a concealed weapon, possession of a regulated firearm after previously having been convicted of a crime of violence, possession of a regulated firearm after previously having been convicted of a disqualifying crime, and reckless endangerment. *State v. Wallace*, 247 Md. App. 349, 353, 236 A.3d 735, 737 (2020). At trial, the State introduced into evidence a shirt worn by Wallace on the night of the shooting which, according to the State's forensic expert, contained traces of gunshot residue. *Id.* at 356, 236 A.3d at 739. The jury also considered testimony from the crime lab technician who responded to the scene, other forensic experts and witnesses, Wallace's father and girlfriend, and Freeman.

Wallace motioned for judgment of acquittal on the concealed weapon charge, which the circuit court granted, and the State *nolle prossed* the charge of use of a handgun in the

---

[1] "OnStar Corporation is a subsidiary of General Motors that provides subscription-based communications, in-vehicle security, emergency services, hands-free calling, turn-by-turn navigation, and remote diagnostics systems throughout the United States" and other countries. Wikipedia, the Free Encyclopedia, *Onstar*, https://en.wikipedia.org/wiki/OnStar, archived at https://perma.cc/YW5R-LDHV.

commission of a felony. The jury acquitted Wallace of attempted first-degree murder, but convicted him of the remaining offenses. Thereafter, the court sentenced Wallace

> to a term of thirty years' imprisonment for attempted second-degree murder, a consecutive term of twenty years' imprisonment (the first five without the possibility of parole) for use of a handgun in the commission of a crime of violence, and a concurrent term of five years' imprisonment, without the possibility of parole, for possession of a regulated firearm after previously having been convicted of a crime of violence, merging the remaining convictions for sentencing purposes.

*Id.* at 353–54, 236 A.3d at 737–38. Wallace appealed his convictions to the Court of Special Appeals, which affirmed in an unreported opinion. *Wallace v. State*, No. 557, Sept. Term, 2012 (Md. Ct. Spec. App. July 11, 2013).

**Post-conviction Proceedings**

Wallace filed a Petition for Post-Conviction Relief on January 3, 2018, alleging that trial counsel had rendered ineffective assistance in three instances: "(1) failing to object to [his] prior bad acts evidence; (2) failing to take appropriate action to limit the damage caused by the jury learning of the nature of [his] prior convictions; and (3) failing to object to the attempted second-degree murder jury instruction that was given at trial." As a result, Wallace requested that his convictions be vacated and that a new trial be granted. On January 12, 2018, the State filed an initial answer to the petition, denying the allegations. On July 26, 2018, the State filed a supplemental response to the petition conceding the jury instruction error, but disputing Wallace's other allegations of ineffective assistance of counsel.

A post-conviction hearing was held on March 6, 2019. On June 12, 2019, the post-conviction court granted Wallace's petition, and later issued an accompanying

5

memorandum opinion, reflecting that trial counsel's failure to object to the erroneous jury instruction on the attempted second-degree murder charge was deficient, and resulted in prejudice to Wallace's defense. The court found that trial counsel's failure to object to the admission of the slashed tire incident as prior bad acts evidence constituted a permissible trial strategy and was not deficient. Additionally, the court determined that trial counsel's failure to object to the admission of Wallace's prior conviction for a crime of violence was deficient. Finally, the court found that "[t]he *combination* of the three allegations described above, the deficient jury instruction[], the failure to object to prior bad acts evidence, and the failure to object to the prior crime of violence language amounts to deficient performance by trial counsel and that this deficient performance prejudiced [Wallace's] case." In granting Wallace a new trial, the post-conviction court was "convinced that the cumulative effect of all three errors clearly resulted in denial of effective assistance of counsel. All three errors, together, demonstrate that but for counsel's errors, the result of the trial might have been different."

The State filed a motion for reconsideration, arguing that Wallace was only entitled to a new trial for the erroneous jury instruction on the attempted second-degree murder charge. On June 21, 2019, the post-conviction court issued an order denying the State's motion to reconsider. The order also directed that the court's memorandum opinion "shall be clarified to reflect the [c]ourt's finding[s] that trial counsel's failure to object to the prior bad acts evidence was an error and amounts to deficient performance; . . . there is reasonable probability that, but for trial counsel's errors, the result of the proceeding would

6

have been different; and . . . that the cumulative effect of trial counsel's errors clearly resulted in denial of effective assistance of counsel[.]"

**Court of Special Appeals**

The State filed an application for leave to appeal to the Court of Special Appeals, which was granted. The State argued that the post-conviction court erred in granting a new trial on all counts. The State contended that Wallace should receive a new trial solely for the attempted second-degree murder conviction.

The Court of Special Appeals "vacat[ed] the post-conviction court's order and remand[ed] with instructions to vacate the attempted second-degree murder conviction but otherwise deny the post-conviction petition." *Wallace*, 247 Md. App. at 355, 236 A.3d at 738. The Court examined trial counsel's failure to object to the erroneous jury instruction and "conclude[d] that the appropriate remedy . . . is vacatur of the conviction of attempted murder in the second degree, the only conviction affected by trial counsel's failure to object to the erroneous jury instruction." *Id.* at 365, 236 A.3d at 744 (footnote omitted). Regarding trial counsel's concession concerning the admissibility of other bad acts evidence, the Court did not hold that the performance was deficient, "[b]ut even if admissibility of this testimony was a close call, we still cannot say that trial counsel's concession to its admissibility was objectively unreasonable." *Id.* at 370, 236 A.3d at 747.

Next, the Court considered trial counsel's failure to object to the circuit court's instructions to the jury regarding Wallace's prior conviction for a crime of violence. It determined that, although the failure to object constituted deficient performance, Wallace was not prejudiced by the instruction, because the circuit court could have rectified the

7

instruction had an objection been made. *Id.* at 374, 236 A.3d at 749. Finally, the Court determined that the cumulative effect doctrine,[2] articulated in *Bowers v. State*, 320 Md. 416, 578 A.2d 734 (1990), has an "exceedingly narrow application" and would not apply. *Id.* at 375–76, 236 A.3d at 750. Thereafter, Wallace timely appealed to this Court, and we granted *certiorari*. *Wallace*, 471 Md. at 520, 242 A.3d at 1117.

## DISCUSSION

### Standard of Review

This Court reviews "a post-conviction court's findings regarding ineffective assistance of counsel [a]s a mixed question of law and fact. The factual findings of the post-conviction court are reviewed for clear error. The legal conclusions, however, are reviewed *de novo*." *State v. Syed*, 463 Md. 60, 73, 204 A.3d 139, 146 (2019), *reconsideration denied* (Apr. 19, 2019), *cert. denied*, 140 S. Ct. 562 (2019) (internal citations omitted); *Newton v. State*, 455 Md. 341, 351–52, 168 A.3d 1, 7 (2017) ("Because we are not finders of fact, we defer to the factual findings of the post-conviction court unless clearly erroneous. But we review the court's legal conclusion regarding whether the defendant's Sixth Amendment rights were violated without deference.") (citing *Harris v. State*, 303 Md. 685, 698, 496 A.2d 1074 (1985)). As part of our review, we "exercise[] [our] own independent analysis as to the reasonableness, and prejudice therein, of counsel's conduct." *Syed*, 463 Md. at 73, 204 A.3d at 146 (citing *Oken v. State*, 343 Md. 256, 285,

---

[2] As applied in *Bowers*, 320 Md. at 416, 578 A.2d at 734, numerous deficiencies of trial counsel can, in the aggregate, amount to ineffective assistance of counsel. The cumulative effect theory is discussed thoroughly below.

681 A.2d 30, 44 (1996)) (internal quotation marks omitted); *Newton*, 455 Md. at 352, 168 A.3d at 7 ("We 're-weigh' the facts in light of the law to determine whether a constitutional violation has occurred.") (citation omitted).

**Ineffective Assistance of Counsel**

"The Sixth Amendment to the U.S. Constitution grants criminal defendants a right to effective assistance of counsel."  *Newton*, 455 Md. at 355, 168 A.3d at 9 (citing *Strickland*, 466 U.S. at 685, 104 S. Ct. at 2063).  In *Strickland*, the Supreme Court explained that:

> The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. . . .
>
> That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command.  The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.  An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

466 U.S. at 685, 104 S. Ct. at 2063 (citations and internal quotation marks omitted).

To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to "show that his or her counsel performed deficiently[]" and "that he or she has suffered prejudice because of the deficient performance."  *Syed*, 463 Md. at 75, 204 A.3d at 147 (citations omitted); *Newton*, 455 Md. at 355, 168 A.3d at 9 (citation omitted) ("Under *Strickland*, to establish ineffective assistance of counsel, a defendant must show that: (1) his attorney's performance was deficient; and (2) he was prejudiced as a result.").

9

"[W]e need not approach the inquiry in any particular order, nor are we required in every instance to address both components of the *Strickland* test." *Oken*, 343 Md. at 284, 681 A.2d at 44; *see also Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *Newton*, 455 Md. at 356, 168 A.3d at 9 ("*Strickland* also instructs that courts need not consider the performance prong and the prejudice prong in order, nor do they need to address both prongs in every case.") (citation omitted). "The object of an ineffectiveness claim is not to grade counsel's performance. . . . Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S. Ct. at 2064. In the absence of a showing of deficient performance and the resulting prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Syed*, 463 Md. at 75, 204 A.3d at 147 (citation omitted).

To ascertain whether trial counsel's performance was "deficient," a "defendant must show that the attorney's performance was objectively unreasonable under prevailing professional norms." *Bailey v. State*, 464 Md. 685, 703, 212 A.3d 912, 922 (2019) (quotation marks and citation omitted); *see also In re Parris W.*, 363 Md. 717, 725, 770 A.2d 202, 206–07 (2001) ("To prove deficient performance, the defendant must identify

10

acts or omissions of counsel that were not the result of reasonable professional judgment. The standard by which counsel's performance is assessed is an objective one, and the assessment is made by comparison to prevailing professional norms.") (citations omitted). "Judicial scrutiny of counsel's performance is highly deferential, and there is a strong (but rebuttable) presumption that counsel rendered reasonable assistance and made all significant decisions in the exercise of reasonable professional judgment." *In re Parris W.*, 363 Md. at 725, 770 A.2d at 207. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Newton*, 455 Md. at 355, 168 A.3d at 9 (citation omitted). We also consider whether trial counsel's actions or inactions were reasonably "pursued as a form of trial strategy." *Coleman v. State*, 434 Md. 320, 331, 75 A.3d 916, 922 (2013) (citation and quotation marks omitted); *Walker v. State*, 391 Md. 233, 260, 892 A.2d 547, 562 (2006) ("Strategic decisions must nonetheless be supported by reasonable professional judgment."). "A strategic trial decision is one that is founded upon adequate investigation and preparation." *Syed*, 463 Md. at 75, 204 A.3d at 148 (citation and quotation marks omitted).

Not every instance of deficient conduct by trial counsel is prejudicial. *Syed*, 463 Md. at 87, 204 A.3d at 154–55. As Justice Kennedy succinctly noted, "a defendant has a right to effective representation, not a right to an attorney who performs his duties mistake free. . . . That said, the concept of prejudice is defined in different ways depending on the

context in which it appears." *Weaver v. Massachusetts*, ___ U.S. ___, ___, 137 S. Ct. 1899, 1910–11 (2017).

To determine whether trial counsel's conduct "prejudiced" a defendant, we must be convinced that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[] or . . . that the result of the proceeding was fundamentally unfair or unreliable." *Newton*, 455 Md. at 355, 168 A.3d at 9 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 669, 104 S. Ct. at 2056. We have "further interpreted the 'reasonable probability' standard to mean that there existed 'a substantial or significant possibility that the verdict of the trier of fact would have been affected[.]'" *Syed*, 463 Md. at 137, 204 A.3d at 184 (Hotten, J., concurring and dissenting) (citing *Bowers*, 320 Md. at 426, 578 A.2d at 739); *Syed*, 463 Md. at 87–88, 204 A.3d at 155 (Maj. Op.) (citation and markings omitted) ("the likelihood of a different result must be substantial, not just conceivable."). To do so, we "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 669, 104 S. Ct. at 2056.

**Trial Counsel's Performance at Issue**

With these principles in mind, we review Wallace's claims of ineffective assistance of counsel. Wallace alleged that his trial counsel rendered ineffective assistance in three instances: "failing to object to the attempted second-degree murder jury instruction that was given at trial[;] failing to take appropriate action to limit the damage caused by the jury learning of the nature of [his] prior convictions; [and] failing to object to [his] prior bad acts evidence[.]" We address each one in turn.

12

**Attempted second-degree murder instruction.**

Wallace was charged with attempted second-degree murder. To prove attempted murder in the second degree, "the State must show a specific intent to kill—an intent to commit grievous bodily harm will not suffice." *State v. Earp*, 319 Md. 156, 164, 571 A.2d 1227, 1231 (1990); *Alston v. State*, 414 Md. 92, 118, 994 A.2d 896, 911 (2010) ("we reject the defendant['s] argument that the jury, if properly instructed, could have found [him] guilty of a conspiracy to commit second[-]degree murder of the type *based on an intent to inflict grievous bodily harm*. There is no such offense under Maryland law.") (emphasis added). The "intent to kill" requirement for attempted second-degree murder was also reflected in the pattern jury instructions at the time:

> In order to convict the defendant of attempted murder in the second degree, the State must prove: (1) that the defendant took a substantial step, beyond mere preparation, toward the commission of murder in the second degree; (2) that the defendant had the apparent ability, at that time, to commit the crime of murder in the second degree; and (3) that the defendant actually intended to kill (name).

MPJI-Cr 4:17.13(B) (2d ed. 2012).[3]

---

[3] "[A] specific intent to kill is an indispensable element of the crime of *attempted* murder, in either degree." *State v. Selby*, 319 Md. 174, 178, 571 A.2d 1236, 1238 (1990) (emphasis added) (referencing *Earp*, 319 Md. at 164, 571 A.2d at 1231). By contrast, in a case of a *completed* second-degree murder, i.e. the victim died as a result of the defendant's actions, "the trier of fact may find the requisite intent for second-degree murder, even where the defendant did not intend to kill the victim, but did intend to inflict grievous bodily harm." *Thornton*, 397 Md. at 733, 919 A.2d at 694–95 (footnote omitted); *Davis v. State*, 237 Md. 97, 104, 205 A.2d 254, 258 (1964) *overruled on other grounds as recognized in Thornton v. State*, 397 Md. 704, 919 A.2d 678 (2007) ("An actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack."); *see also* Maryland State Bar Standing Committee on Pattern Jury Instruction ("MPJI-Cr") 4:17.6(C) (a jury may

(continued . . .)

The circuit court gave the following instruction regarding Wallace's attempted second-degree murder charge:

> The Defendant is also charged with the crime of attempted second-degree murder. A second-degree murder is the killing of another person, is the attempted killing [] of another person with either the intent to kill *or the intent to inflict such serious bodily harm that death would be the likely result*.

> Second-degree murder does not require premeditation or deliberation. In order to convict the Defendant of attempted second-degree murder, the State must prove that, by his conduct, the Defendant attempted to cause the death of Steven Freeman and that the Defendant engaged in the deadly conduct either with the intent to kill *or with the intent to inflict such serious bodily harm that death would be the likely result*.

(Emphasis added).[4]

This instruction was erroneous, because it allowed the jury to convict Wallace of attempted second-degree murder without a finding of the requisite level of intent. "[A] specific intent to kill is an indispensable element of the crime of *attempted* murder, in either degree." *State v. Selby*, 319 Md. 174, 178, 571 A.2d 1236, 1238 (1990) (emphasis added) (referencing *Earp*, 319 Md. at 164, 571 A.2d at 1231). "[A]n intent to commit grievous bodily harm will not suffice." *Earp*, 319 Md. at 164, 571 A.2d at 1231. By allowing the jury to convict with a finding of intent to inflict serious bodily harm and without a finding

_____

(. . . continued)
find a defendant guilty of a *completed* second-degree murder if the state proves that "the defendant caused the death of [the victim]; and that the defendant engaged in the deadly conduct either with the intent to kill or with the intent to inflict such serious bodily harm that death would be the likely result.").

[4] As noted previously, Wallace was also charged with attempted first-degree murder. The circuit court correctly instructed the jury on the attempted first-degree murder charge, and the jury acquitted Wallace on that charge.

14

of intent to kill, the jury instruction was flawed. Defense counsel did not object to the erroneous instruction.

As the State concedes, counsel's failure to object constituted deficient performance. The failure to object resulted in the conviction of attempted second-degree murder on a lower threshold of intent. Allowing the jury to reach a guilty verdict with a less demanding finding of intent—i.e. a finding of intent to inflict serious bodily harm as opposed to a finding of an intent to kill—"was objectively unreasonable under prevailing professional norms." *Bailey*, 464 Md. at 703, 212 A.3d at 922; *see, e.g.*, *Unger v. State*, 427 Md. 383, 417, 48 A.3d 242, 262 (2012) (concluding that the post-conviction court correctly granted a new trial following trial counsel's failure to object to jury instructions that "were clearly in error"). The failure to object was not reasonably "pursued as a form of trial strategy." *Coleman*, 434 Md. at 331, 75 A.3d at 922. "Strategic decisions must nonetheless be supported by reasonable professional judgment." *Walker*, 391 Md. at 260, 892 A.2d at 562. For a defense attorney to make it easier for the jury to convict is not a decision that is normally "supported by reasonable professional judgment." *Id.*, 892 A.2d at 562.

The prejudicial impact of the failure to object is disputed. Wallace argues that since all of the charges stem from the same action—i.e. the purported shooting of Freeman—the taint of counsel's error "likely influenced the jury" as to the remaining charges, thereby extending to all of Wallace's convictions. The State counters, as the Court of Special Appeals reasoned, that the spillover effect of counsel's failure to object did not extend beyond the attempted second-degree murder conviction. We agree.

15

To measure the prejudicial impact of counsel's error, we "must consider the totality of the evidence before the judge or jury," to determine whether there is "a substantial or significant possibility that the verdict of the trier of fact would have been affected." *Syed*, 463 Md. at 86–87, 204 A.3d at 154 (citations omitted). When reviewing an error in a case with "multiple offenses involved," this Court has stated that "the remedy for an error in the instructions on one of the offenses depends upon the degree to which the erroneous instruction taints each individual conviction." *State v. Hawkins*, 326 Md. 270, 291, 604 A.2d 489, 500 (1992) (citations omitted). In *Hawkins*, there was no error regarding a felony murder instruction, but there was an erroneous instruction regarding a conviction for accessory after the fact. *Id.* at 290, 604 A.2d at 500. In that case, this Court explained:

> The decisive factor, however, is that the prejudice [of the erroneous instruction] devolved only on the verdict of guilty of the crime of accessory after the fact. The prejudice did not reach the murder verdict; that verdict was proper in all respects and remained unsullied. All things considered, we do not believe that the defective instruction influenced the jury one whit in its decision that Hawkins was guilty of felony murder.
>
> ***
>
> Inasmuch as the defective instruction despoiled only the accessory after the fact verdict and left the murder verdict chaste and pure, there is no good cause to wash out the judgment entered on the murder conviction. It is only the judgment entered on the accessory after the fact conviction which must be vacated.

*Id.* at 290–91, 604 A.2d at 499–500.

There is a "substantial or significant possibility" that Wallace's conviction for attempted second-degree murder was affected by counsel's failure to object to the erroneous instruction. The jury instruction on the attempted second-degree murder charge erroneously added an intent factor—"intent to inflict such serious bodily harm that death

16

would be the likely result"—that permitted the jury to convict Wallace upon a lesser finding of culpability than required. Lowering the finding of culpability threshold created a substantial likelihood that the verdict would be affected. The acquittal on the attempted first-degree murder charge also reflects a substantial likelihood that the jury's finding was impacted by the erroneous instruction, since both attempted murder in the first and second degree share a threshold requirement of an intent to kill, as opposed to an intent to inflict serious bodily harm.[5] The acquittal on the attempted first-degree murder charge may have led to an acquittal of the attempted murder in the second-degree charge, had the correct intent requirement—intent to kill and not an intent to inflict serious bodily harm—been instructed. Counsel's failure to object to the instruction prejudiced Wallace as to his attempted second-degree murder conviction, because it lowered the threshold intent requirement necessary for the jury to convict him of that charge, thereby entitling him to a new trial on that count.

To determine the potential prejudicial impact of that error, we consider whether the other convictions "would have been affected" by the erroneous instruction. *Syed*, 463 Md. at 87, 204 A.3d at 154. Put another way, "but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Newton*, 455 Md. at 355, 168 A.3d at 9. In the instant case, the specific prejudicial error related to an intent requirement; the

---

[5] Attempted murder in the first degree requires that the intent be a willful, with premeditation and deliberation, intent to kill, while attempted murder in the second degree does not. *Compare* MPJI-Cr. 4:17.13(A) ("the defendant willfully, and with premeditation and deliberation, intended to kill (name)."), *with* MPJI-Cr. 4:17.13(B) ("the defendant actually intended to kill (name).").

prejudice being that the ineffectiveness of counsel caused a lesser bar for the jury to find the requisite intent to convict. The prejudicial flow, however, dries up there because, in our view, Wallace's remaining convictions "remain unsullied" by counsel's error regarding the mistaken jury instruction. *Hawkins*, 326 Md. at 290–91, 604 A.2d at 499–500.

Wallace was also charged with assault in the first and second degree, use of a handgun in the commission of a crime of violence, and reckless endangerment, which all require a finding of intent.[6] The jury's pronouncement of guilt on the attempted second-degree murder charge reflects that Wallace had *the intent to inflict such serious bodily harm that death would be the likely result*. This satisfies the intent requirement for the other convictions of assault and use of a handgun in the commission of a crime of violence because the assault charges were predicated on the act of Wallace intentionally shooting Freeman. *See* MPJI-Cr 4:01 (Second-degree assault "is causing offensive physical contact to another person."); MPJI-Cr 4:01.1A ("[T]o convict the defendant of first[-]degree assault, the State must prove all of the elements of second[-]degree assault and also must prove that: (1) the defendant used a firearm to commit assault; or (2) the defendant intended to cause serious physical injury in the commission of the assault."). Accordingly, the jury's finding—that Wallace intended to inflict such serious bodily harm that death would be the likely result—would meet the requirements of the assault convictions. The determination of the jury reflects that Wallace intended to cause offensive physical contact while using a

---

[6] Wallace was also charged and convicted of possessing a firearm after being convicted of a disqualifying crime, which is discussed below in conjunction with Wallace's other claims of ineffective assistance of counsel.

18

firearm with the intent to cause serious physical injury. While this finding was not sufficient to convict Wallace of attempted second-degree murder, as explained above, it was sufficient to support the jury's guilty verdict on the assault and use of a firearm in the commission of a crime of violence charges. In other words, the jury found the required intent for the assault convictions to be present, and therefore, it is not substantially likely that "but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Newton*, 455 Md. at 355, 168 A.3d at 9.

**Failure to object to the disclosure of prior conviction of a crime of violence.**

A defendant charged with a crime involving the prohibited possession of a firearm can stipulate that he or she was prohibited from possessing a firearm at the time, without describing the underlying reason why the defendant was prohibited, i.e., the disqualifying crime. *Carter v. State*, 374 Md. 693, 722, 824 A.2d 123, 141 (2003). This allows the factfinder to make the factual determination of whether the defendant possessed a firearm—the charge at issue—without importing any potential prejudice from the nature of the underlying disqualifying crime. *Id.* at 722, 824 A.2d at 141. As we explained in *Carter*:

> When the defendant admits or the parties stipulate to the previous-conviction element of a charge under [a previous version of the relevant statute], the trial judge should inform the jury that the defendant admits that he or she has been convicted of a crime for which he or she is prohibited from possessing a regulated firearm under the law. *The judge should not describe the previous conviction with any more particularity or by using the categories of crimes under [the statute] (such as "crime of violence" or "felony").*

*Id.* at 722, 824 A.2d at 141 (emphasis added); *Hemming v. State*, 469 Md. 219, 259, 229 A.3d 825, 849 (2020) ("the *Carter* Court promulgated a *per se* rule, under which the State

is not permitted to object to such a stipulation and, if requested by a defendant, the [circuit] court must grant or accept the stipulation."). Accordingly, upon request, "any defendant charged with the possession of a regulated firearm by a prohibited person is legally entitled to a stipulation that informs the jury that he or she is simply prohibited from possessing a regulated firearm, and disclosing no further detail regarding any prior convictions[.]" *Id.* at 259, 229 A.3d at 849.

Stipulating to the prior conviction serves the purpose to "avoid exposing the jury to the potential prejudicial effect that a description of the nature of that conviction might have." *Shannon v. State*, 468 Md. 322, 333 n.6, 227 A.3d 220, 226 n.6 (2020). "A description of the conviction by its statutory category carries with it a high potential to lure jurors into a sequence of bad character reasoning, just as if the judge described the crime by its name or nature (i.e., robbery with a deadly weapon)." *Carter*, 374 Md. at 722, 824 A.2d at 141. A general description that a defendant is prohibited from possessing a firearm is just as probative as a description of the underlying conviction by which the defendant is prohibited from possessing the firearm. *Id.*, 824 A.2d at 141. "This general description also avoids any potential confusion in determining how to characterize a previous conviction that fits more than one of the categories of crimes listed under [the statute]." *Id.*, 824 A.2d at 141.[7]

_____

[7] The purpose of stipulating to the prior conviction is *not* to withhold from the jury any indication that a defendant's actions may be subject to criminal punishment. As we explained in *Carter*:

> The jury's role in deciding guilt or innocence involves more than merely
> (continued . . . )

20

Wallace was convicted of use of a handgun in the commission of a crime of violence, possession of a regulated firearm after previously having been convicted of a crime of violence, and possession of a regulated firearm after previously having been convicted of a disqualifying crime. *Wallace*, 247 Md. App. at 356–57, 236 A.3d at 739. Prior to the close of evidence at trial, the prosecutor informed the circuit court of the *Carter* stipulation—that the defendant was disqualified from possessing a firearm without describing the nature of the disqualifying crime, so that the jury could render a decision solely on the charge of possession without being influenced by the nature of the underlying offense—to be read to the jury, but stated "I added the language, which is a crime of violence, to that stipulation." Defense counsel did not object.

The prosecutor then read the following stipulation to the jury: "The stipulation is that the State and the Defense stipulate that this Defendant, Charles Edward Wallace, Junior, was previously convicted of a disqualifying offense in this State, *which is a crime of violence*, that prohibited him from possessing a regulated firearm at the time of this

---

(. . . continued)

finding innocuous facts; rather, it requires a judgment about an individual's behavior based on an established code. This determination cannot be reached reliably without a full appreciation of the criminality of one's behavior. The jurors must know, therefore, why they are being asked to subject an individual to criminal punishment for possessing a firearm when, generally, such an act is not illegal. When the jury does not understand that the defendant may not possess a firearm because of a previous criminal conviction, its ability to carry out its role is impeded.

374 Md. at 713–14, 824 A.2d at 136.

offense." (Emphasis added). Again, Defense counsel did not object to the insertion of the

"crime of violence" language. Thereafter, the court instructed the jury:

> The Defendant is charged with the crime of use of a handgun in the commission of a crime of violence. The crimes of violence in this case are attempted first-degree murder, attempted second-degree murder, first-degree assault, and second-degree assault.
>
> In order to convict the Defendant, the State must prove that the Defendant committed those -- one or more of those crimes of violence and that the Defendant used a handgun in the commission of the crime of violence.
>
> ***
>
> A person may not possess a regulated firearm if the person has been previously convicted of a disqualifying offense. The State and the Defendant have stipulated that this Defendant was previously convicted of a disqualifying crime.
>
> ***
>
> The State and the Defense have also stipulated that the Defendant was previously convicted of a crime of violence.

In response to the prosecutor's inquiry regarding the apparent duplicative nature of the

instruction—"previously convicted of a disqualifying crime" and stipulation of a previous

conviction of "a crime of violence"—the court instructed the jury as follows:

> I'm going to re-read one of the instructions that has to do with possession of a regulated firearm. I had previously told you that a person may not possess a regulated firearm if the person has been previously convicted of a disqualifying offense.
>
> The law also is -- and you will see a count for this -- a person may not possess a regulated firearm if the person has been previously convicted of a crime of violence. The State and Defense have stipulated that this Defendant was previously convicted of a crime of violence.

The court thereafter asked the parties if there was "[a]nything further from the bench?" to

which defense counsel replied "No, Your Honor."

Trial counsel's failure to object to the insertion of the "crime of violence" language into the *Carter* stipulation was deficient. The failure to object to the insertion of the "crime of violence" language in the stipulation undermined the purpose of making a *Carter* stipulation: to "avoid exposing the jury to the potential prejudicial effect that a description of the nature of that conviction might have." *Shannon*, 468 Md. at 333 n.6, 227 A.3d at 226 n.6 (citation omitted). The failure to object was not "the result of reasonable professional judgment." *In re Parris W.*, 363 Md. at 725, 770 A.2d at 206. The theory of defense was that Wallace was misidentified as the one who shot Freeman. Exposing the jury to a previous conviction of a crime of violence was not a reasonable form of trial strategy when the "description of the nature of th[e] conviction" could potentially sway the jury to find that Wallace was the one who shot Freeman and would not seem to be a form of reasonable trial strategy. *Shannon*, 468 Md. at 333 n.6, 227 A.3d at 226 n.6 (citation omitted).[8]

However, we are not persuaded that Wallace was prejudiced by trial counsel's failure to object to the insertions of the "crime of violence" language into the stipulation.

---

[8] We disagree with the State that the failure of trial counsel to object to the insertion of the "crime of violence" language into the stipulation was not deficient. The State reasons that because the stipulation is only required upon request of the defense, and is not mandatory *per se*, a failure regarding the stipulation would not automatically be considered deficient performance. As noted above, the *Carter* stipulation applied "when[ever] the defendant admits *or the parties stipulate to*" the disqualifying crime. 374 Md. at 722, 824 A.2d at 141 (emphasis added). Here, the record reflects that the parties stipulated jointly: "The stipulation is that the State and the Defense stipulate that [Wallace] was previously convicted of a disqualifying offense . . . ." In our view, once the *Carter* stipulation was in effect as a result of the joint stipulation, trial counsel's failure to object to the additional language was deficient.

To establish that the deficiency was prejudicial, Wallace must show that "there was a substantial or significant possibility that the verdicts were affected by his trial counsel's conduct." *Ramirez v. State*, 464 Md. 532, 577, 212 A.3d 363, 390 (2019) (citing *Syed*, 463 Md. at 86–87, 204 A.3d at 154) (markings omitted). In other words, Wallace must demonstrate either that there is "a reasonable probability that[] but for trial counsel's [deficiency,] the result of the proceeding would have been different[] or that . . . the proceeding was fundamentally unfair or unreliable." *Newton*, 455 Md. at 355, 168 A.3d at 9 (quotation marks and internal citation omitted). In addition, "the likelihood of a different result must be substantial, not just conceivable." *Syed*, 463 Md. at 87–88, 204 A.3d at 155 (citation and markings omitted).[9]

We cannot conclude that there was a substantial likelihood that the jury would have reached a different result even if the proper stipulation had been read. *Syed*, 463 Md. at 87–88, 204 A.3d at 155 ("the likelihood of a different result must be substantial, not just conceivable.") (citation and markings omitted). As previously discussed, the jury received an erroneous instruction on the intent requirement for attempted second-degree murder,

---

[9] The State argues that, under *Newton*, we must presume that if defense counsel had objected to any reference during trial (or in the jury instructions) to a prior conviction for a "crime of violence," the trial judge would have sustained the objection. Wallace responds that *Newton* is distinguishable from this case because Newton did not argue that, but for his lawyer's deficient performance, there was a reasonable probability of a different outcome in his trial. Rather, Newton argued that prejudice should be presumed in his case. The Court of Special Appeals adopted the State's position on this point. We need not decide whether the intermediate appellate court was correct to apply *Newton*'s reasoning to this case. Even if we do *not* presume the trial judge would have sustained an objection based on *Carter*, as discussed below we cannot conclude that, but for the error, there is a reasonable probability that Wallace's trial would have turned out differently.

24

which tainted its guilty verdict on that charge. The erroneous instruction allowed the jury to find Wallace guilty for intent to inflict grievous bodily harm (as opposed to the actual requirement of intent to kill for attempted murder), which, as evidenced by its verdict of guilty for attempted second-degree attempted murder, it did. To find that Wallace had the intent to inflict serious bodily harm, the jury must have also found that Wallace shot Freeman. While not sufficient to convict Wallace of attempted second-degree murder based on the requisite level of intent, the finding that Wallace shot Freeman reflects that the jury also found that Wallace was in possession of a firearm. *See Carter*, 374 Md. at 713, 824 A.2d at 136 (explaining that a reliable jury determination requires "a full appreciation of the criminality of one's behavior."). The mistaken stipulation did not create a "substantial likelihood" that the jury would have achieved a different result but for counsel's error.

Wallace also argues that, based on the evidence adduced at trial and the jury deliberations, the erroneous addition of the crime of violence language into the stipulation needlessly lured the jury into assuming that Wallace was of a violent character, which in turn tipped the scales in favor of a guilty verdict. The defense theory at trial was that Wallace was misidentified as the shooter. In support, the defense presented testimony that Freeman was not a credible witness and that Wallace's son, Teon, who was deceased at the time of trial, was present at the scene, owned a firearm, and that Freeman had said that Teon was the shooter. The defense also presented an expert witness who opined that the gunshot residue found on Wallace's shirt was a possibly contaminated and insufficiently sized sample. According to Wallace, the jury notes sent during deliberations coupled with

25

the acquittal of the attempted first-degree murder charge further demonstrate that the case was not an open and shut one for the jury to decide, and therefore, that the inclusion of the crime of violence language prejudiced Wallace by causing the jury to reach a guilty verdict.

This Court has recognized that "a verdict that is only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Ramirez v. State*, 464 Md. 532, 577, 212 A.3d 363, 390 (2019) (citations and markings omitted). However, "a petitioner fails to prove that his or her trial counsel's performance prejudiced him or her where, at trial, the State offered strong evidence of the petitioner's guilt." *Id.* at 577, 212 A.3d at 390; *id.* at 578 n.12, 212 A.3d at 390 n.12 ("The principle that strong or overwhelming evidence of guilt undermines the likelihood of proof of prejudice in the *Strickland* analysis is well-established. *See Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069; *Syed*, 463 Md. at 97, 204 A.3d at 160; *Walker*, 391 Md. at 256, 892 A.2d at 560–61. This principle is distinct from a harmless-error analysis, which would be conducted on direct appeal.").

In *Ramirez*, the defendant raised the claim of ineffective assistance of counsel, based on trial counsel's failure to strike a juror for cause as a result of the juror's answers during *voir dire*. 464 Md. at 554–55, 212 A.3d at 376–77. This Court found counsel's performance deficient, but concluded that Ramirez had not been prejudiced because of the evidence presented by the State:

> In sum, the State offered strong direct and circumstantial evidence of Ramirez's guilt, including extremely inculpatory testimony not only by both victims [], but also by the getaway driver []. The strength of the State's case against Ramirez leads to the conclusion that there is no substantial or significant possibility that the outcome of the trial would have been different

26

had [the juror who should have been struck for cause] not served on the jury. . . . These circumstances support our determination that the State's evidence was strong—indeed, overwhelming—and that there is no substantial or significant possibility that the outcome of the trial would have been different but for [the juror's] presence on the jury.

*Id.* at 580, 212 A.3d at 392. Similarly, in *Syed*, the petitioner raised a claim of ineffective assistance of counsel for his trial counsel's failure to call a potential alibi witness, which this Court rejected: "[T]he State's case against [the petitioner] could not have been substantially undermined merely by the alibi testimony [] because of the substantial direct and circumstantial evidence pointing to [the petitioner]'s guilt." 463 Md. at 97, 204 A.3d at 160. Likewise, in *Walker*, this Court determined that minimal participation by petitioner's counsel at trial was not sufficient to establish prejudice: "[T]he case against [the petitioner] was built upon substantial documentary and testimonial evidence. Here, the record reflects no defense [that the petitioner] could have asserted if counsel had behaved differently." 391 Md. at 256, 892 A.2d at 560–61.

We are not persuaded that Wallace's convictions were based on a weak record and therefore "more likely to have been affected" by counsel's error with regards to the failure to object to the crime of violence language. The State's case was built on witness testimony, including Freeman's positive identification of Wallace, and the discovery of gunshot residue on Wallace's shirt, to establish that Wallace was the shooter. In fact, Wallace challenged the merits of his convictions—a denial of his motion to suppress evidence and the admissibility of the gunshot residue evidence—and the Court of Special Appeals affirmed. *Wallace v. State*, No. 557, Sept. Term, 2012 (Md. Ct. Spec. App. July 11, 2013). Although Wallace's theory of misidentification presented an alternative

27

narrative for the jury to consider, he failed to establish that the jury's ultimate verdict was based on an insufficient or weak record or that the mistaken insertion of the crime of violence language swayed the jury's determination.

**Failure to object to bad acts evidence.**

Maryland Rule 5-404(b) provides that:

> Evidence of other crimes, wrongs, or other acts . . . is not admissible to prove the character of a person in order to show action in the conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, . . . knowledge, identity, [or] absence of mistake or accident[.]

The reason that evidence of "bad acts" is generally prohibited is because of the potential prejudice to the defendant that could result. *Streater v. State*, 352 Md. 800, 810, 724 A.2d 111, 116 (1999). "Prejudice may result from a jury's inclination to convict the defendant, not because it has found the defendant guilty of the charged crime beyond a reasonable doubt, but because of the defendant's unsavory character or criminal disposition as illustrated by the other crimes evidence." *Id.* at 810, 724 A.2d at 116 (citations omitted). The rule does permit evidence of other crimes "if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal." *Sifrit v. State*, 383 Md. 116, 132, 857 A.2d 88, 97 (2004) (citing *State v. Faulkner,* 314 Md. 630, 634, 552 A.2d 896, 897–98 (1989)). As the Rule illustrates, "substantially relevant" includes evidence relevant "to prove motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." *Gutierrez v. State*, 423 Md. 476, 489, 32 A.3d 2, 10 (2011) (citing Md. Rule 5-404(b)). Additionally, to be admissible "the evidence must

be clear and convincing in establishing the accused's involvement in the prior bad acts [and] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* at 490, 32 A.3d at 10 (citations omitted).

Prior to opening statements at trial, the State moved *in limine* to allow Freeman to testify about prior interactions with Wallace. According to the State, Freeman would testify that Wallace had previously attempted to sell him fake drugs on multiple occasions, that Wallace was violent and angry, had committed an armed robbery against a friend of Freeman, and had slashed Freeman's tire several years prior to the shooting after Freeman had refused to purchase drugs from Wallace. Wallace's trial counsel objected to the admission of the testimony as hearsay and impermissible propensity evidence. *See Montague v. State*, 471 Md. 657, 696, 243 A.3d 546, 568 (2020) (footnote omitted) ("When evidence is excluded under Rule 5-404(b) as improper propensity evidence, that evidence is excluded because its probative value is substantially outweighed by the danger of unfair prejudice under Rule 5-403."). The circuit court asked defense counsel whether testimony regarding the tire slashing incident could be admissible as motive for the shooting. In response, trial counsel agreed that the evidence of the tire slashing incident would be admissible to prove motive, but argued that testimony of the remaining incidents should be considered impermissible propensity evidence, and the circuit court agreed. At trial, Freeman testified that Wallace had, about six years prior to the current incident, slashed his tires after Freeman had refused to purchase drugs from him, and defense counsel did not object.

Wallace claims that counsel's failure to object was deficient, because the tire slashing incident was not the "catalyst" of the alleged shooting, and was therefore not admissible as motive, and that any probative value of the testimony was outweighed by the prejudicial impact. As Wallace notes, this Court has defined "motive" as "the catalyst that provides the reason for a person to engage in criminal activity." *Snyder v. State*, 361 Md. 580, 604, 762 A.2d 125, 138 (2000) (citations omitted). We further explained in *Snyder* that "[e]vidence of previous quarrels and difficulties between a victim and a defendant is generally admissible to show motive." *Id.* at 605, 762 A.2d at 139.

In the case at bar, the other crimes evidence was directly relevant to the prosecution's theory of motive and identity. The theory of Wallace's defense at trial was that Freeman had misidentified the shooter; and that instead of Wallace, it was his son, Teon, who physically resembled Wallace and was deceased at the time of trial. Freeman's testimony regarding the tire slashing incident, then, was relevant to show both identity— that Wallace was the one who shot him—and motive—that the shooting resulted from a longstanding feud between them.

Employing "an objective standard of reasonableness[,]" we do not perceive that counsel's conduct was deficient. *State v. Shortall*, 463 Md. 324, 335, 205 A.3d 985, 991 (2019). The State had originally attempted to introduce, through Freeman's testimony, other instances of Wallace's alleged conduct which indicated that Wallace was of violent character, including several instances that Freeman was aware of Wallace's violent and angry tendencies, although not personally. Defense counsel properly pushed back against the admissibility of the more damaging propensity evidence, successfully, and after some

30

discussion, relented on the tire slashing incident because of Md. Rule 5-404(b), which allows evidence of a prior bad act to show motive or identity, both of which were relevant at trial. The apparent concession of the tire slashing incident, in light of the other evidence that the State had wanted to introduce, was a reasonable "form of trial strategy" and not deficient. *Coleman*, 434 Md. at 331, 75 A.3d at 922. *Cf. id.* at 338, 75 A.3d at 927 ("We do not see how trial counsel's failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice.").

**Cumulative Effect Theory**

Even if individual instances of error by trial counsel are insufficient to reverse a verdict based on ineffective assistance of counsel, "their cumulative effect may be." *Bowers*, 320 Md. at 436, 578 A.2d at 744. In *Bowers*, trial counsel committed "numerous lapses" that were "sufficient, taken all together, to show inadequate performance." *Id.* at 436, 578 A.2d at 743; *id.* at 431, 578 A.2d at 741 ("Bower's case was beset with difficulties."). Trial counsel's lapses included unjustified failure to investigate physical evidence related to the murder, failure to present an opening statement, proffer defense testimony, numerous errors during cross-examination, and failure to request an advantageous jury instruction based on the evidence presented by the prosecution. This Court concluded that "[c]onsistent with the test in *Strickland* we can and do say, . . . that all of these shortcomings leave us convinced that but for counsel's errors the result of the trial might well have been different." *Id.* at 436, 578 A.2d at 743–44.

The post-conviction court determined, *sua sponte*, that the cumulative effect of trial counsel's performance constituted deficient performance. For its authority, the post-

conviction court cited this Court's decision in *Bowers*, 320 Md. at 416, 578 A.2d at 734, and the Court of Special Appeals' decision in *Cirincione v. State*, 119 Md. App. 471, 506, 705 A.2d 96, 112–13 (1998) ("Even when no single aspect of the representation falls below the minimum standards required under the Sixth Amendment, the cumulative effect of counsel's entire performance may still result in a denial of effective assistance."). On this appeal, Wallace also challenges the Court of Special Appeals' observation that the cumulative effect theory "has exceedingly narrow application" and does not apply.

This Court has rejected claims of cumulative ineffectiveness of counsel because "twenty times nothing still equals nothing." *See State v. Borchardt*, 396 Md. 586, 634, 914 A.2d 1126, 1154 (2007) ("Borchardt provides no reason why we should conclude that his claims of ineffective assistance of counsel collectively have any greater force than they have individually. This is an issue of simple mathematics: twenty times nothing still equals nothing.") (citations omitted); *Gilliam v. State*, 331 Md. 651, 686, 629 A.2d 685, 703 (1993) ("We see no basis to conclude that Gilliam's claims collectively have any greater force than they have individually."). The only decision of this Court which applied the cumulative effect theory was *Bowers*, 320 Md. at 436, 578 A.2d at 743, which is distinct from the instant appeal. In the case at bar, as noted above, trial counsel committed two errors, and even according to Wallace's claims, at most, three errors. That is a far cry from the "numerous lapses" of trial counsel that this Court found to be cumulatively ineffective in *Bowers*. 320 Md. at 436, 578 A.2d at 743. The prejudicial impact of those "numerous lapses" in *Bowers*—which warranted a new trial—was still a "difficult [assessment] to make" considering that trial counsel's errors so permeated the proceedings that it was

unclear what a reasonable outcome of those proceedings may have been had there been less errors. *Id.*, 578 A.2d at 743. That, by contrast, is not the case here where trial counsel's error was, as explained above, limited to the conviction for attempted second-degree murder only.

## CONCLUSION

The inactions of Wallace's counsel regarding the erroneous attempted second-degree murder charge, the insertion of the crime of violence language into the stipulation regarding the firearm possession charges, and the admission of bad acts evidence warrant a new trial on the attempted second-degree murder charge only. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**